UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**CHAD Q. EVANS,**
        **Plaintiff,**

vs.                                                     05-3117

**GREG FIRKUS, LARRY SIMS, RAYMOND
BENSKO, DAVID WILLIS, JOHN SCHONAUER,
LT. NILES, VILLA JENNINGS, G. BATTIN, BETSY
TANNER, DAVE HUFFMAN, SGT. KENNIT,
DR. IRSHAD, GLEN THOMPSON, WILLARD ELYEA,
DONALD SNYDER, C/O THOMAS, C/O GONZALEZ,
DONNA DREW, S. SANDERS, S. COOPER, Asst. Dir. PAGE,
Asst. Dir. ORR, ROGER WALKER and SHERRY BENTON,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER**

    Before the court are Defendants, Greg Firkus, Raymond Bensko, Raymond Gonzales and Sherry Benton's motion for summary judgment on retaliation claim [135], the plaintiff's response [137] and the defendants' reply [141]. The Defendants, Greg Firkus, Raymond Bensko, Raymond Gonzales and Sherry Benton request this court to enter summary judgment in their favor and against the Plaintiff on his retaliation claim.

**Standard**

    Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

    "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In

order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## Background

Plaintiff claims he received a disciplinary ticket and was transferred in retaliation for filing grievances and lawsuits. Plaintiff was written a disciplinary report for Unauthorized Movement and Trading or Trafficking. Plaintiff alleges that Defendants Firkus and Bensko retaliated against him by having him transferred from the Logan Correctional Center to the Big Muddy Correctional Center. Plaintiff alleges Defendants Benton and Gonzalez retaliated against him by not investigating his claims that the disciplinary report was fictitious. As the court has noted in its September 7, 2007 order, it is unclear what protected activity these Defendants were retaliating against.

## Undisputed Material Facts[1]

1. Chad Evans received a disciplinary ticket on January 7, 2005, for violation of IDOC rules. Specifically, the plaintiff was charged with possessing Contraband/ Unauthorized Property and Unauthorized Movement. (Adjustment Committee Final Summary Report).
2. Defendant Gonzalez was a member of the Adjustment Committee that heard the Plaintiff's ticket, found him guilty and decided his punishment. (Gonzalez Affidavit).
3. Defendant Gonzalez made his decisions based on the disciplinary report and a corresponding Internal Affairs investigation, and Chad Evans was found guilty of Contraband/Unauthorized Property and Unauthorized Movement. (Gonzalez Affidavit).

---

[1]Exhibits are attached to the defendants' summary judgment motion [135], unless otherwise noted. Plaintiff does not provide a statement of undisputed facts, disputed facts, or immaterial facts. He provides what appears to be arguments. Further, Plaintiff's affidavit [137] will not be considered as he does not declare that the statements made therein are true under penalty of perjury under the laws of the United States of America, nor is it subscribed and sworn to before a notary public.

4. Defendant Gonzalez's findings were not in retaliation for any grievances or lawsuits Chad Evans had filed or planned to file. (Gonzalez Affidavit).
5. Defendant Gonzalez was not told by anyone what decision to make or how to discipline Chad Evans. (Gonzalez Affidavit).
6. The Plaintiff was approved for a transfer from Logan Correctional Center to Big Muddy River Correctional Center on February 1, 2005. (Transfer Report).
7. Plaintiff was submitted for an administrative transfer at the request of Internal Affairs. (Transfer Report, Bensko Affidavit).
8. Internal Affairs requested the Plaintiff be transferred due to his involvement in investigations concerning staff. (Transfer Report).
9. Defendant Bensko approved the transfer on February 1, 2005. (Transfer Report, Bensko Affidavit).
10. The transfer of the Plaintiff was not motivated by any grievance or lawsuit he filed or planned to file. (Bensko Affidavit).
11. Defendant Benton responded to the Plaintiff's grievance regarding his transfer and the disciplinary report in question. (Exhibit E to Defendants' Motion for Partial Summary Judgment).
12. Defendant Benton's response was based on her review of all available information and discussion with Officer Willis. (Benton Affidavit).
13. Defendant Benton's response was not in retaliation for any lawsuit or grievance filed by the Plaintiff. (Benton Affidavit).
14. Plaintiff contends that because Defendant Benton did not respond favorably to his grievance about retaliation, she condoned the activity. (Plaintiff's deposition p. 95 lines 14-25, p. 96 lines1-7).
15. David Petty was the person to request the transfer of the Plaintiff due to his involvement in investigations concerning staff. (E-mail correspondence between David Petty, Ray Bensko and Michael Montcalm).

**Discussion and Conclusion**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by

"set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e).  In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added).  Personal knowledge may include inferences and opinions drawn from those facts.  *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).  "But the inferences and opinions must be grounded in observation or other first-hand personal experience.  They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience."  *Visser*, 924 F.2d at 659.

Prison officials may impinge upon an inmate's constitutional rights so long as the impingement is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987).  A prison official may not retaliate against a prisoner because that prisoner filed a grievance, even if the adverse action does not independently violate the constitution.  *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000).  In order to prevail in a First Amendment retaliation case, a plaintiff must satisfy two fundamental requirements: (1) the expression at issue must be protected, and (2) it must have brought about the retaliatory action complained of.  *See Whitmore's Automotive Services v. Lake County*, 424 F.3d 659, 668 (7th Cir. 2005).   Speech in a grievance is not always protected.  Only matters of public interest or concern rise to the level of a protected activity or speech.  *Brookins v. Kolb*, 990 F.2d 308, 313 (7th Cir. 1993).  Thus, speech that is strictly personal in nature is not protected speech. *See Id*.  The act of filing a grievance is a necessary part of the administrative remedies that must be exhausted before an inmate may file a lawsuit and is therefore a protected activity. *DeWalt v. Carter*, 224 F.3d at 618.  However, inmates do not have the right to file frivolous claims.  *Lewis v. Casey*, 518 U.S. 343, 354 n.3 (1996).  Therefore, speech in a grievance is only protected to the extent that the issues stated in the grievance are matters of public concern that could be a non-frivolous cause of action in court.  Even where the speech is protected, a bald allegation of the ultimate fact of retaliation for the protected speech is insufficient.  *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985).  Plaintiff must show that his constitutionally protected conduct was a substantial motivating factor leading to the alleged retaliatory acts.  *Mount Healthy City School Dist. v. Doyle*, 429 U.S. 274, 287 (1997).

First, liability under §1983 requires a plaintiff to show direct, personal responsibility on the defendants' part for those acts and omissions claimed to have deprived the plaintiff of his rights.  *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982).  Supervisory officials will not be found liable under the doctrine of respondeat superior.  *Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir. 1985).  In order to be held liable under §1983, a supervisor must have "had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct." *J.H. and J.D. v. Johnson*, 346 F.3d 788, 793 (7th

4

Cir. 2003). A supervisor who is merely negligent in failing to detect and prevent employees' conduct will not be liable under §1983. *Jones v. Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

According to Plaintiff, he was assigned to work at "forward stock" at Logan, which came with an unrestricted movement pass granted by Defendant Willis. Part of Plaintiff's job was moving and installing shelves in inmates' cells, for which he had authorization from Willis and other prison officials. Despite this authorization, Willis placed Plaintiff and his brother under investigation regarding their movement of certain shelves. Willis wrote a disciplinary ticket against Plaintiff accusing him of contraband/unauthorized property and unauthorized movement. The ticket accused Plaintiff and his brother of taking four shelves from the warehouse to the forward stock area without authorization. (d/e 128, Ex. 10). A disciplinary hearing was held on the ticket on January 17, 2005. The Final Summary Report states that Plaintiff had requested no witnesses and had admitted the ticket was accurate. See Ex. D [123]. In his response [132], the plaintiff does not dispute this fact. Plaintiff was found guilty on the ticket and received 11 months C grade, 11 days segregation, loss of commissary, and 1 month recreation restriction. His punishment was upheld by the Administrative Review Board. In the court's September 7, 2007 order, the court granted summary judgment to Defendants on Plaintiff's procedural due process claims, but also held that although Plaintiff had no procedural due process claim, the disciplinary ticket, punishment and transfer may still be the basis for a retaliation claim. "The federal courts have long recognized a prisoner's right to seek administrative or judicial remedy of conditions of confinement, . . . as well as the right to be free from retaliation for exercising this right." *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996)(citations omitted)(denying qualified immunity for retaliation claim). Acts which are constitutional can become unconstitutional if done in retaliation for the exercise of a constitutionally protected right. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 1999)(citations omitted). "This is so even if the adverse action does not
independently violate the Constitution."

As discussed in the court's previous order [133], as to Defendant Willis, the court does see a possible retaliation claim. According to Plaintiff's deposition, Plaintiff told Willis he would be filing a grievance on the internal investigation of the shelf incident because "it was bogus and Willis knew it." Willis replied, "Don't make it personal," to which Plaintiff responded, "I'm not, I just have to file a grievance to exhaust my remedies before filing suit." Willis then offered not to give Plaintiff's brother across the board punishment if Plaintiff didn't file a grievance. Plaintiff declined and Willis wrote the ticket. According to Plaintiff, Willis then put Plaintiff in segregation and confiscated Plaintiff's legal books and papers, including a complaint Plaintiff had begun drafting about the lockdown. (Plaintiff's Dep. P. 83-85). All this arguably allows an inference that Willis wrote the ticket in retaliation for Plaintiff's statement to Willis that he intended to file a grievance. This is sufficient to state a retaliation claim against Willis–the protected conduct being Plaintiff's pursuit of his First Amendment right to seek redress of grievances for the "bogus" investigation.

The court sees no reasonable inference that any of the defendants, other than Willis, were

motivated by retaliation for Plaintiff's exercise of his First Amendment rights.  Plaintiff asserts they all acted in retaliation, but retaliation for what?  Plaintiff does not identify what grievances or lawsuits he had filed before the ticket was heard and the court sees none in the record.  All the grievances in the record, as well as this lawsuit, occurred after Willis' writing of the ticket and the disciplinary hearing and transfer. It is not enough for defendants to be motivated by dislike for Plaintiff–they must have been motivated by a desire to retaliate against Plaintiff because he was exercising a constitutionally protected right.  "To succeed on a retaliation claim, the plaintiff must "establish that his protected conduct was a motivating factor behind [the defendants' actions], . . ." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).  What was the constitutionally protected conduct?

The plaintiff has not demonstrated that Gonzales, Benton, Firkus or Bensko retaliated against him for engaging in a protected conduct.  The court sees no evidence that Defendants Gonzalez or Benton were motivated by retaliation for Plaintiff's exercise of his First Amendment rights.  All they did was believe Willis' version over Plaintiff's and declined to investigate further.   There is no evidence that Gonzalez's actions were motivated by Plaintiff engaging in a protected conduct.  The defendants are right. The plaintiff cannot rely on the doctrine post hoc ergo propter hoc (after this, therefore, because of this).  In other words, the plaintiff cannot successfully allege that just because certain events occurred after he filed grievances, that the later occurrences were retaliatory and based upon Plaintiff's activities.  *See Burmudez v. TRC Holdings*, 138 F.3d 1176, 1179 (7th Cir. 1998).  Grievances and disciplinary reports are frequent occurrences in the prison setting.  The burden is on the plaintiff to establish that Gonzalez's actions were motivated by the plaintiff's grievances. In the instant case, Defendant Gonzalez's actions were not motivated by the plaintiff's grievances; rather, Defendant Gonzalez heard plaintiff's disciplinary report and based his decision on the plaintiff's admissions and the internal affairs report. (Undisputed Fact # 3). Defendant Gonzalez's findings were not in retaliation for any grievances or lawsuits Chad Evans had filed or planned to file. (Undisputed Fact #4).  Finally, Defendant Gonzalez was not told by anyone what decision to make or how to discipline Chad Evans.  (Undisputed Fact #5).  To further support the court's findings that there is no evidence that Gonzalez retaliated against the plaintiff, the plaintiff in his response [137], paragraph 12 states "[i]n fairness to the issue of retaliation plaintiff does not see Gonzalez as being at fault, but was only named prior for other issues already ruled on by this court."   Thus, the court finds Plaintiff has abandoned his retaliation claim against Defendant Gonzales.

Likewise, there is no evidence that Defendant Benton's actions were motivated by retaliation.  Plaintiff wants this court to believe that Defendant Benton's response to Plaintiff's grievance was retaliatory in nature because her response to his grievance was not favorable.  Plaintiff contends that because Benton did not respond favorably to his grievance about the alleged retaliation she condoned it.  (Undisputed Fact #14).  However, it is well settled that Defendant Benton cannot be held liable for the actions of others.  *See Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982).  Additionally, although Plaintiff has no constitutional right to an investigation, Defendant Benton did investigate Plaintiff's grievance.  Defendant Benton contacted Officer Willis to inquire about the ticket and that, coupled with all other information available to her, led her to decide the grievance should be denied.  (Undisputed Fact #12).

Further, Defendant Benton had no motive to retaliate against the Plaintiff. The Plaintiff was not grieving anything related to Defendant Benton and there is no evidence that Defendant Benton had any animus towards the Plaintiff. Further, Plaintiff is not entitled to a response to his grievances at all. *See Maust v. Headley*, 959 F.2d 644, 648 (7th Cir.1992); *Shengo v. Jurich*, 681 F.2d 1091, 1098-99 (7th Cir.1982). (Because the Constitution requires no grievance procedure at all, the alleged failure of jail officials to respond to Plaintiff's complaints does not, by itself, violate the Constitution.)

Plaintiff claims that Defendants Bensko and Firkus transferred him in retaliation for filing grievances. However, the Plaintiff has offered no evidence to prove this claim. Plaintiff still has not presented any evidence that his transfer was substantially motivated by retaliation for protected speech. Specifically, there is no evidence to show Defendant Firkus knew of the Plaintiff's lawsuits or grievances. In fact, Defendant Bensko, states that his approval of the transfer was not motivated by any grievance or lawsuit. (Undisputed Fact #10, Document 135). In his "Affidavit" the plaintiff states that Firkus saw the plaintiff after he came out of segregation and was upset that he was still in the prison. Even if Firkus was angry the Plaintiff was still at his institution and immediately requested his transfer, no constitutional violation exists. In his self-serving "Affidavit" [137], plaintiff claims that his counselor informed him that Firkus was transferring his brother and him because of his grievances, but this is hearsay that is not admissible under any exception to hearsay. Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Plaintiff has not controverted the evidence that the transfer was not motivated by his lawsuits or grievances.

Plaintiff's speculation that the new warden Bensko was motivated by retaliation in the transfer and in the punishment is unsupported by evidence. Plaintiff has not presented any evidence that his transfer was substantially motivated by retaliation for protected speech. Specifically, there is no evidence to show Defendant Bensko knew of the Plaintiff's lawsuits or grievances. In fact, Defendant Bensko, states that his approval of the transfer was not motivated by any grievance or lawsuit. (Undisputed Fact #10, Document 135).

Plaintiff has not disputed the evidence that the transfer was not motivated by his lawsuits or grievances. The corresponding transfer report clearly shows that the transfer was administrative in nature and was done at the request of Internal Affairs. (Undisputed Fact #7). Internal Affairs requested the transfer of the Plaintiff due to his involvement in investigations concerning staff. (Undisputed Fact #8). While Defendants Bensko and Firkus approved the transfer, it is clear from the transfer report that Internal Affairs prompted the transfer of the Plaintiff. Further, the correspondence between David Petty, Ray Bensko and Michael Montcalm make evident it was David Petty, and not any of the Defendants, who requested that Chad Evans be transferred. (Undisputed Fact #15).

Finally, when challenges to witness' credibility are all that a plaintiff relies on, and he has shown no independent facts, no proof, to support his claims, summary judgment in favor of the defendant is proper. *Springer v. Durflinger*, WL 540220 (7th Cir. 2008); *citing Dugan v.*

*Smerwick Sewerage Co.*, 142 F.3d 398, 406 (7th Cir.1998). *Springer v. Durflinger*, WL 540220 (7th Cir. 2008); *citing Dugan v. Smerwick Sewerage Co.,* 142 F.3d 398, 406 (7th Cir.1998). Furthermore, even if Plaintiff had identified the constitutionally protected conduct that motivated the adverse actions by Gonzales, Benton, Firkus or Bensko, he still must prove that the same adverse actions would not have occurred absent the retaliatory motive. *See Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004). In other words, if the adverse actions would have been taken anyway, the retaliation claim fails. The plaintiff has not shown that the adverse actions would not have occurred absent the alleged retaliatory motives. Gonzales, Benton, Bensko and Firkus are entitled to summary judgment on the plaintiff's claim that they transfer him in retaliation of his grievances and lawsuit. This claim fails.

**Based on the foregoing, it is ordered:**

1. **Pursuant to Fed. R. Civ. Pro. Rule 56, the defendants Greg Firkus, Raymond Bensko, Raymond Gonzales and Sherry Benton are entitled to summary judgment on the plaintiff's claim that they transferred him in retaliation of his grievances and lawsuit. Motion for partial summary judgment [135] is allowed. At the close of this case, the clerk of the court is directed to enter judgment in favor of these defendants on this claim and against the plaintiff.**
2. **The proposed final pretrial order shall be filed by March 14, 2008. A final pretrial conference is scheduled for March 17, 2008 at 1:30 p.m. by video conference. Jury trial is scheduled for March 31, 2008, at 9:00 a.m. by personal appearance before the court in Urbana. The clerk of the court is directed to issue a writ for the parties' appearances at the final pre-trial conference and jury trial.**

**Enter this 11th day of March 2008.**

s\Harold A. Baker

_____

**Harold A. Baker**
**United States District Judge**